### FARGO MERCANTILE CO. v. BRECHET & RICHTER CO.

(Circuit Court of Appeals, Eighth Circuit. January 21, 1924.)

#### No. 6244.

1. **Copyrights ⬅9—Labels registered in Patent Office held protected as copyrights.**

    A copyright of a label was secured by publication thereof with notice of the copyright, followed by registration in the Patent Office, pursuant to Act Cong. June 18, 1874, § 3, if the label was not a mere advertisement, but copyrightable as having literary or artistic merit; Congress not intending that such labels be patented or have the status only of a trade-mark.

2. **Copyrights ⬅9—That labels were intended for use for advertising purposes does not prevent copyright.**

    The fact that labels might be used, or are intended to be used, for advertising purposes, is not a bar to copyright, under Act Cong. June 18, 1874, § 3.

3. **Copyrights ⬅9—Labels embracing recipes held copyrightable.**

    A label, to be used on bottles and cartons in connection with sale of fruit nectars, *held* copyrightable under Act Cong. June 18, 1874, § 3; the label containing recipes, which were copyrightable, regardless of whether fanciful emblems on the label could be copyrighted.

4. **Copyrights ⬅76—Plaintiff held in position to sue for infringement.**

    One who registered label in Patent Office after publication with notice of copyright under Act Cong. June 18, 1874, § 3, and sent copies to the

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Commissioner of Patents, and paid the fee as provided, the label never having been used without notice of copyright and name of owner, was entitled to sue for infringement.

**5. Copyrights ☞53—Appropriation of recipes on copyrighted label held infringement.**

A copyrighted label *held* infringed by appropriating recipes appearing thereon.

**6. Copyrights ☞87—Court may award statutory damages for infringement.**

Under Act March 4, 1909, § 25b (Comp. St. § 9546), in action for infringement of copyright, the court may at its election award what are known as statutory damages in lieu of actual damages.

Appeal from the District Court of the United States for the District of North Dakota; Andrew Miller, Judge.

Suit by the Brechet & Richter Company against the Fargo Mercantile Company. Decree for plaintiff, and defendant appeals. Affirmed.

E. T. Conmy, of Fargo, N. D. (Young, Conmy & Young, of Fargo, N. D., on the brief), for appellant.

F. A. Whiteley, of Minneapolis, Minn., for appellee.

Before SANBORN, Circuit Judge, and BOOTH and FARIS, District Judges.

BOOTH, District Judge. In this suit plaintiff seeks an injunction and damages for infringement of a copyright and for unfair competition in trade. The subject-matter of the claimed copyright is stated by plaintiff to be "a label embodying as the principal and distinguishing features thereof a series of new and original recipes." The recipes contain detailed directions for making various articles of food and drink, using divers ingredients, including plaintiff's fruit nectar. The label contains, in addition to the recipes, a fanciful emblem printed in colors, the letters B and R, other printed advertising matter, and plaintiff's name. The label is used on bottles and on cartons containing the bottles in connection with the sale by plaintiff of certain "fruit nectars" manufactured by it. Plaintiff claims that copyright of the label was secured by publication thereof, with notice of the copyright, followed by registration in the United States Patent Office, pursuant to Act of Congress June 18, 1874 (18 Stat. p. 79, c. 301, § 3); the certificate of the copyright being registered on September 21, 1915, certificate No. 18762.

The court below has denied any relief for the alleged unfair competition, but has awarded an injunction and damages for infringement of the copyright. The assignment of errors raises four main questions: (1) Is the label copyrightable? (2) Has plaintiff so complied with the law as to be able to maintain an action for infringement? (3) Has defendant infringed? (4) Is the amount of damages and attorney's fees which was allowed justified?

[1] 1. Plaintiff's claim of a copyright is based in part upon section 3 of the Act of June 18, 1874. It is conceded by the defendant that that section of the statute is still in force. That conclusion is supported by Jewelers' Co. v. Keystone Co. (C. C. A.) 281 Fed. 86, 26 A. L. R. 571; Stecher Co. v. Dunston Co. (D. C.) 233 Fed. 601; 28 Op. Attys.

Gen. 116. There may be doubt as to the correctness of such conclusion. See the interesting discussion in Weil, Copyright Law, p. 222. It seems clear that sections 1 and 2 and the definition contained in the first part of section 3 of said act have been repealed by section 63 of the act of 1909 (Comp. St. § 9584). In view, however, of the attitude of the parties in the case at bar, we shall assume that the remaining part of section 3 is still in effect. The section reads as follows:

"Sec. 3. That in the construction of this act, the words 'engraving,' 'cut' and 'print' shall be applied only to pictorial illustrations or works connected with the fine arts, and no prints or labels designed to be used for any other articles of manufacture shall be entered under the copyright law, but may be registered in the Patent Office. And the Commissioner of Patents is hereby charged with the supervision and control of the entry or registry of such prints or labels, in conformity with the regulations provided by law as to copyright of prints, except that there shall be paid for recording the title of any print or label not a trade mark, six dollars, which shall cover the expense of furnishing a copy of the record under the seal of the Commissioner of Patents, to the party entering the same."

It is to be noted that this section neither specifically grants nor denies copyright protection to prints and labels designed to be used for any other articles of manufacture. It simply provides that such prints and labels shall not be "entered under the copyright law," but "may be registered in the Patent Office," and provides, further, that the Commissioner of Patents shall have control of the registry of such labels in conformity with the regulations provided by law as to copyright of prints. The status of such label after it is registered in the Patent Office is not specifically defined by the statute. The vital inquiry, therefore, is whether such labels, having been published with notice of copyright, and having been registered in the Patent Office, are protected by the 1909 Copyright Act, provided such labels are not mere advertisements, but possess some value as intellectual compositions, and serve some purpose in promoting the progress of a useful art. Plaintiff claims that such a registered label is protected by the copyright law the same as any other copyright, provided it has previously been published with a notice of copyright. Defendant, on the other hand, states its claim as follows:

"It is clear that labels 'designed to be used for any other articles of manufacture' were by the statute made noncopyrightable. And Congress, desiring to make some provision for the protection of labels of this class, made them registerable as patents or trade-marks. But because these labels differed so greatly from the ordinary invention in their intrinsic nature, the strict regulations in regard to patent entries were considered inapplicable and the more lenient provisions relating to the entry and registry of copyrights were substituted. So that by this statute labels that were denied copyright were given an opportunity to be patented or registered, without the onerous requirements of proof considered so inapplicable to them."

Some support is found for this theory in the provision of the statute for registration in the Patent Office, also in certain remarks of the Attorney-General in 28 Op. Attys. Gen. 116, and also in the language used by the court in Rosenbach v. Dreyfuss (D. C.) 2 Fed. 217, and in Schumacher v. Wogram (C. C.) 35 Fed. 210. But a holding in accordance with defendant's theory would bar from copyright all labels "designed to be used for any other articles of manufacture," no matter

how great artistic or literary value such labels might have, and no matter how well they might serve to promote some useful art. We do not think such a conclusion was intended by Congress in passing the act of 1874. The authority for Congress to enact statutes granting copyright protection is found in the clause of article 1, section 8, of the United States Constitution, reading as follows:

"The Congress shall have power * * * to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

Under this authority Congress has passed numerous copyright statutes, commencing as early as 1790. The subject-matters of copyright protection have been enlarged from time to time by specific mention, but of course have been limited at all times by the language of the clause of the Constitution above quoted. But both Congress and the courts have given a liberal construction to this clause of the Constitution. Several times prior to the act of 1874 Congress had changed the place of filing a copy of the matter to be copyrighted; at one time such matter was filed with the State Department, at another with the Interior Department, and at still another with the Librarian of Congress, and, finally, with the Register of Copyrights in the Library of Congress.

That the act of 1874 provides that a certain class of matter shall be registered in the Patent Office is not of material importance, therefore, in determining whether such matter is entitled to copyright protection. The test, in our judgment, is not where the matter is directed to be registered, but what the character of the matter is. It is plain that protection of some sort to labels was intended by Congress by the language of section 3 of the act of 1874; otherwise, there would have been no reason for making any provision in regard to the registry of such labels. The question to be determined is whether this protection was to be that afforded to a trade-mark, a patent, or a copyright. The three classes differed in the term of the protection granted, in the penalties for infringement, and in the rules of procedure. The omission of a condition that the labels should be used in commerce, interstate, foreign, or with Indian tribes, is not conclusive against the view that Congress intended them to be considered trade-marks, for at the time of the passage of the 1874 act Congress had no thought that trade-marks, to be valid, must be restricted in that manner. This is made clear by the fact that the law of 1870 (16 Stat. p. 198, c. 230) makes no such conditions as to trade-marks. And the Supreme Court did not decide until 1879 the Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550, which held the trade-mark section of the 1870 statute (16 Stat. 198) unconstitutional, and suggested the limitations necessary to a constitutional trade-mark law.

But the history of the passage of the act of 1874 through the two houses of Congress, meager though it is, yet conclusively shows that Congress did not intend these labels to be considered "trade-marks." In the brief discussions of the bill in both the Senate and the House, it was distinctly stated that it applied to labels "which are not trade-marks." See Congressional Record, 43d Congress, 1st Session, vol.

2, pt. 5, pp. 4413, 4875, 4899. And section 3 itself negatives any idea that these labels were to be considered trade-marks by the language of the provision for payment for recording. It reads:

"There shall be paid for recording the title of any print or label not a trade-mark, six dollars."

This is a plain recognition of labels entirely outside the class of trade-marks.

Nor do we think that Congress intended these labels to be patented. Such an intention could apply only to those labels whose character would bring them under the classification of design patents. Labels consisting of written matter would thus be left entirely without protection, although such matter might be an original composition of high value.

It is our conclusion that by the act of 1874 Congress did not intend to exclude from copyright protection "prints or labels designed to be used for any other articles of manufacture," provided such prints and labels met the test of being copyrightable matter. No such intention is indicated by anything that occurred in the passage of the act through Congress, and the mere provision contained in the act that such labels and prints should be registered in the Patent Office, instead of being filed with the Librarian of Congress, does not in our judgment lead to such a conclusion, especially in view of the further provision in the act that the Commissioner of Patents was charged with the supervision and control of the registry of such prints or labels "in conformity with the regulations provided by law as to copyright prints." This language would indicate that the statutory provisions which conferred the protective right and which regulated the remedies were those relating to copyrights, not those relating either to trade marks or to patents. This conclusion is supported by the decision of Judge Blatchford, in Marsh v. Warren, Fed. Cas. No. 9,121. It is also sustained by the case of Higgins v. Keuffel, 140 U. S. 428, 11 Sup. Ct. 731, 35 L. Ed. 470. While the label in that case was held not copyrightable, the ground for the decision was that the label was a mere advertisement, possessing no artistic merit, and having no value as a composition. It was further held, by implication at least, that a label, if of the proper character, would receive copyright protection under the act of 1874. This conclusion was assumed by the court below ([C. C.] 30 Fed. 627), and that assumption was not discredited by anything said by the Supreme Court in its opinion on the appeal. On the contrary, the Supreme Court in its opinion, speaking of that act, said (page 434, [11 Sup. Ct. 733]):

"The copyright is secured when the registration is complete, and a certificate of the registration is given by the Commissioner, just as under the former law it was secured when the proper filing had been made with the Librarian of Congress and his certificate was issued."

In the same case the court, in discussing the label therein involved, and whether it was of such character as to be within the purview of the clause of the Constitution above quoted, said in reference to the constitutional provision (page 431 [11 Sup. Ct. 732]):

"It cannot, therefore, be held by any reasonable argument that the protection of mere labels is within the purpose of the clause in question. To be entitled to a copyright the article must have by itself some value as a composition, at least to the extent of serving some purpose other than as a mere advertisement or designation of the subject to which it is attached."

This language indicates that if the label has literary or artistic merit and is not a mere advertisement, if it has some value as a composition, at least to the extent of serving some purpose other than mere advertising, it can be copyrighted. A similar conclusion was assumed by this court in case of Golden Rule v. B. V. D. Co., 242 Fed. 929, 155 C. C. A. 517.

[2] The fact that these labels might be used, or were intended to be used, for advertising purposes, is not a bar to copyright. It has many times been held that though a work of art or an original intellectual composition may be used for advertising purposes, or even though it is expressly designed for such purposes, this does not prevent it from being copyrighted. Dejonge v. Breuker, 235 U. S. 33, 35 Sup. Ct. 6, 59 L. Ed. 113; Bleisten v. Donaldson Co., 188 U. S. 239, 23 Sup. Ct. 298, 47 L. Ed. 460; Westermann Co. v. Dispatch Co., 249 U. S. 100, 39 Sup. Ct. 194, 63 L. Ed. 499; Campbell v. Wireback (C. C. A.) 269 Fed. 372, 17 A. L. R. 743; Stecher Co. v. Dunston Co. (D. C.) 233 Fed. 601; J. H. White Mfg. Co. v. Shapiro (D. C.) 227 Fed. 957; No-Leak-O Piston Ring Co. v. Norris (C. C. A.) 277 Fed. 951; Meccano v. Wagner (D. C.) 234 Fed. 912; Yuengling, Jr., v. Schile (C. C.) 12 Fed. 97; Schumacher v. Schwencke (C. C.) 25 Fed. 466.

[3] Examining plaintiff's label, and applying the test indicated in Higgins v. Keuffel, supra, we find that the label may be separated into two parts: First, the part which contains the fanciful emblem and certain printed matter indicating the article manufactured to which the label is attached; second, the part containing the recipes. It is doubtful whether the first part, standing alone, is copyrightable; it has little, if any, merit, and might well be called a mere advertisement. The second part, namely, the recipes, is of a different character. They are not a mere advertisement; they are original compositions, and serve a useful purpose, apart from the mere advertisement of the article itself. They serve to advance the culinary art. Defendant has tacitly admitted this, by appropriating them and distributing them in connection with its own products. If printed on a single sheet, or as a booklet, these recipes could undoubtedly be copyrighted, and we see no reason why this protection should be denied, simply because they are printed and used as a label. The authorities above cited show that the use is not the controlling test. It may be doubtful whether copyright protection covers the fanciful emblem and the printed matter indicating the article of manufacture. Royal Sales Co. v. Gaynor (C. C.) 164 Fed. 207. But, however this may be, it is not of importance here, because the infringement complained of is the appropriating of the recipes. It is sufficient to say that the presence of the fanciful emblem and the purely advertising statements does not in our judgment destroy the copyright protection covering the recipes.

[4] 2. That plaintiff has complied with the law, so as to maintain this suit for infringement, is, we think, established by the proof. There

is evidence of registration of the label in the Patent Office January 22, 1915, and of the publication of the label with notice of copyright in 1914, prior to such registration. There is evidence of sending copies to the Commissioner of Patents and of payment of the fee as provided by law, and there is evidence that the label has never been used without notice of copyright and name of owner. These facts put the plaintiff in a position to sue for infringement.

[5] 3. That the defendant has infringed is clearly proven, inasmuch as it is conceded that the defendant has appropriated bodily most, if not all, of the recipes appearing on the label.

[6] 4. As to damages and attorney's fees: We think election to award what are known as statutory damages in lieu of actual damages vests with the court, and that it is for the court to decide what kind of damages best fits the case. Exercising the authority given by the statute (Act March 4, 1909, c. 320, 35 Stat. p. 1075, § 25b [Comp. St. § 9546]), the court awarded statutory damages. The practice is well established. Westermann v. Dispatch Co., 249 U. S. 100, 39 Sup. Ct. 194, 63 L. Ed. 499; No-Leak-O Piston Ring Co. v. Norris (C. C. A.) 277 Fed. 951.

We see no reason for setting aside the award or for disturbing the amount of attorney's fees allowed.

The decree is affirmed.